Stephen T. AGUINAGA; Wayne Pappan; Janet Brown, individually and in behalf of all Union Members similarly situated, Plaintiffs–Appellees,

v.

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, Defendant–Appellant,

and

United Food and Commercial Workers, Defendant.

No. 92–3211.

United States Court of Appeals, Tenth Circuit.

May 19, 1993.

Robert C. Brown, of Smith, Shay, Farmer & Wetta, Wichita, KS (Ken M. Peterson, Robert W. Coykendall of Morris, Laing, Evans, Brock & Kennedy, Chartered, Patricia M. Dengler of Smith, Shay, Farmer & Wetta, Wichita, KS, with him on the brief), for plaintiffs-appellees.

Laurence Gold, AFL–CIO Legal Dept., Washington, DC (Harry Huge of Shea & Gould, Steven K. Hoffman, Annette M. Capretta of Donovan Leisure, Rogovin, & Schiller, Richard Roesel, United Food & Commercial Workers International Union, Washington, DC, with him on the brief), for defendant-appellant.

Before TACHA, McWILLIAMS, and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

This appeal arises from a hybrid breach of contract/unfair representation class action brought by 641 union members ("Plaintiffs") against their employer, John Morrell & Company ("Morrell"), the United Food and Commercial Workers International Union ("the Union"), and the Local Union 340, United Food and Commercial Workers ("the Local"), under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiffs alleged that Morrell breached several provisions of the 1979 collective bargaining agreement and that the Union and the Local breached their duty of fair representation in their handling of Morrell's breaches. Morrell settled with Plaintiffs prior to trial and the Local was dismissed during the course of trial. After the jury returned a verdict in favor of Plaintiffs and against the Union on Plaintiffs' claim for breach of duty of fair representation, the court awarded Plaintiffs over four million dollars in damages.[1] The

court also awarded Plaintiffs attorney fees in the amount of $2,221,480.92. The Union appeals the award of attorney fees, and Plaintiffs move to dismiss the appeal for lack of jurisdiction.

Plaintiffs claim that we lack jurisdiction over this appeal because the Union's notice of appeal was untimely. Plaintiffs assert that an April 24, 1992 district court order which awarded attorney fees and expenses, but did not determine the amount of the award, was a final appealable order. Therefore, according to Plaintiffs, the Union's appeal, which was not filed within thirty days of that order, was untimely.

In *Phelps v. Washburn University*, 807 F.2d 153 (10th Cir.1986), we adopted a bright line rule that an award of attorney fees is final for purposes of appeal only after it is reduced to a sum certain. *Id.* at 154. Here, the amount of the attorney fees award was undetermined until the court's entry of judgment on May 7, 1992. Consequently, the award of attorney fees was not final until May 7, 1992, and the Union's notice of appeal, filed on June 5, 1992, was timely. *See* Fed.R.App.P. 4(a)(1) (notice of appeal to be filed within thirty days of entry of judgment). Accordingly, we have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the district court's award of attorney fees for an abuse of discretion. *Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1355 (10th Cir.1992). However, the court's "legal analysis which provides the basis for the fee award is reviewable de novo." *Id.*

Under the American Rule, absent a statute or enforceable contract, a prevailing litigant is ordinarily not entitled to collect reasonable attorney fees from the loser. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). However, federal courts, "in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d

---

1. The issue of the Union's liability, and issues relating to the damages award were the subject of a separate appeal. *See Aguinaga v. United Food and Commercial Workers Int'l Union*, 993 F.2d 1463 (10th Cir.1993).

702 (1973). Accordingly, courts have recognized a small number of equitable exceptions to the American Rule—*i.e.*, the bad faith exception, the common fund exception, the willful disobedience of a court order exception, and the common benefit exception. *Alyeska*, 421 U.S. at 257–59, 95 S.Ct. at 1621–22. At the same time, the Court has rejected the private attorney general rationale of fee shifting. *Id.* at 245–46, 95 S.Ct. at 1615 (private attorney general rationale would award attorney fees to prevailing citizen who has vindicated important statutory rights of all citizens). Here, the district court awarded attorney fees under the common benefit exception to the American Rule.

 The common benefit exception applies in cases where "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.' " *Hall*, 412 U.S. at 5, 93 S.Ct. at 1946 (quoting *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 393–94, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1970)). Under the common benefit exception, the court may assess attorney fees against the group that ultimately benefits from the plaintiff's litigation by virtue of its jurisdiction over the parties. *See Mills*, 396 U.S. at 394–95, 90 S.Ct. at 626–27 (court's jurisdiction over corporation made it possible for court to assess fees against all shareholders).

 We have learned that the common benefit exception originates from the common fund exception to the American Rule. *Hall*, 412 U.S. at 5 n. 7, 93 S.Ct. at 1946 n. 7. Under the common fund exception, the successful plaintiff is awarded attorney fees because his suit creates "a common fund, the economic benefit of which is shared by all members of the class." *Id.* Fee shifting is justified under the common fund and common benefit exceptions because "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Mills*, 396 U.S. at 392, 90 S.Ct. at 625.

Thus, in *Mills*, the Supreme Court approved an award of attorney fees to successful shareholder plaintiffs in a suit brought to set aside a corporate merger accomplished through the use of a misleading proxy statement. The Court reasoned that by bringing suit to set aside the merger and thereby enforce the statutory policy against dissemination of misleading proxy statements, the plaintiffs "rendered a substantial service to the corporation and its shareholders." *Id.* at 396, 90 S.Ct. at 627. Under these circumstances, assessing fees against the corporation simply shifted the costs of litigation to all of the shareholders of the corporation— *i.e.*, "the class that has benefited from them and that would have had to pay them had it brought the suit." *Id.* at 397, 90 S.Ct. at 628.

Likewise, in *Hall*, the Supreme Court awarded attorney fees to the prevailing plaintiff under the common benefit exception. 412 U.S. at 8–9, 93 S.Ct. at 1947–48. In *Hall*, the plaintiff brought suit against his union under § 102 of the Labor–Management Reporting and Disclosure Act ("LMRDA"). The plaintiff had been expelled from his union for violating a union rule by introducing resolutions that criticized various actions of union officials. *Id.* at 2–4, 93 S.Ct. at 1944–45. After concluding that the union rule could not be used to discipline the plaintiff because he had spoken with reference to a proposal submitted at a union meeting, the Second Circuit eventually upheld the district court's permanent injunction restoring plaintiff's union membership and the court's award of attorney fees. *Id.* The Supreme Court affirmed the award of attorney fees, finding that Congress had not circumscribed fee shifting under the LMRDA, and that the common benefit exception justified the shifting of fees to the entire union membership under the facts of the case. The Court held that the common benefit exception applied because, "by vindicating his own right of free speech guaranteed by § 101(a)(2) of Title 1 of the LMRDA, [the plaintiff] necessarily rendered a substantial service to his union as an institution and to all of its members." *Id.* at 8, 93 S.Ct. at 1948.

In the instant case, the district court assessed attorney fees against the Union under the common benefit exception, thereby spreading Plaintiffs' litigation costs to the

entire Union membership. The court did so finding that the jury's verdict vindicated the right of all Union members to be fairly represented by the Union. According to the court, as a result of Plaintiffs' suit:

> [t]he members of the Union should be able to expect that in the future, the Union will treat all members more fairly..... In the future, all Union members can expect that the Union will investigate and pursue remedies against employers who attempt to circumvent the terms of the collective bargaining agreement or who attempt to illegally and fraudulently displace union members' jobs with nonunion workers.

Appellant App. at 6. The district court therefore awarded attorney fees and costs to Plaintiffs under the common benefit exception to the American Rule.

■■■ The Union argues that the district court's legal analysis of the common benefit exception was erroneous.[2] Specifically, the Union claims that the court erred by failing to recognize that the common benefit exception requires that: (1) the group to which the cost is shifted receive a benefit in common with the prevailing plaintiff, and (2) the assessment of fees is in proportion to benefits received.[3]

The common benefit exception, by definition, requires that the benefit received by the prevailing plaintiff and the benefit received by the group to which fees are shifted be "common" to both. In *Mills*, the Supreme Court, in first defining the common benefit exception, stated that fee shifting was appropriate, "where a plaintiff has successfully maintained a suit, usually on behalf of a

class, that benefits a group of others *in the same manner as himself*." 396 U.S. at 392, 90 S.Ct. at 625 (emphasis added). We interpret this language to require that the prevailing plaintiff and the group share a mutual benefit, or, at least, have some benefit in common as a result of the plaintiff's suit. *See Shimman v. International Union of Eng'rs, Local 18*, 744 F.2d 1226, 1234–35 (6th Cir.1984) (en banc), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). We are further persuaded that benefit commonality is required under the common benefit exception because it is required under the common fund exception, *see* 6 James W. Moore et al., *Moore's Federal Practice* ¶ 54.-78[3] n. 4 (2d ed.1993), and the common benefit exception originates from, and is based on, the same rationale as the common fund exception.

The benefits received by Plaintiffs and the entire Union membership are not common; rather they are separate and distinct. Plaintiffs, by virtue of their action against the Union, received money damages including back pay, lost benefits, and prejudgment interest. The Union membership received, according to the district court, reassurance that in the future, the Union would treat members more fairly, and investigate and pursue remedies against employers who breach collective bargaining agreements. The Union membership cannot share in Plaintiffs' money judgment. Further, because Plaintiffs are not, by operation of the judgment, automatically entitled to Union membership, they may not benefit from any effect their suit may have on the Union's future behavior.[4]

---

2. Although attorney fees are available, if sought, as compensatory damages in § 301 cases under the LMRA, no statute authorizes fee shifting in § 301 cases. *Ames v. Westinghouse Elec. Corp.*, 864 F.2d 289, 293 (3d Cir.1988). Nevertheless, the circuit courts that have addressed the issue have held that the common benefit exception is available, in the appropriate case, to a successful plaintiff who brings an action under § 301. *See e.g., Kinney v. International Bhd. of Elec. Workers*, 939 F.2d 690 (9th Cir.1991); *Emmanuel v. Omaha Carpenters Dist. Council*, 560 F.2d 382 (8th Cir.1977). Although neither party has addressed whether the common benefit exception is available in actions brought under § 301 of the LMRA, we assume, for the purposes of this appeal, that it is.

3. The Union also argues that the court erred by not applying the common fund exception. We decline to entertain this argument because, as the district court correctly pointed out, Plaintiffs based their attorney fee application solely on the common benefit exception.

4. Plaintiffs, in settling with their employer, waived their rights to job reinstatement. The record is unclear, however, as to whether or not all members of Plaintiff class are currently members of the Union. As a result, it could be argued that commonality of benefits is satisfied if all members of Plaintiff class remain Union members. Nevertheless, we need not engage in speculation to address this argument because we hold that the award of attorney fees also fails due to lack of proportionality of benefits received. *See infra.*

This is unlike the situation in *Hall,* where the entire union membership and the plaintiff shared a common benefit from the plaintiff's suit against the union. 412 U.S. 1, 93 S.Ct. 1943. In *Hall,* the plaintiff sought and won reinstatement in the union. *Id.* at 3, 93 S.Ct. at 1945. The judgment for the plaintiff resulted in a mutual benefit because both the plaintiff and the rest of the union membership benefitted from whatever positive effect the suit had on the union's future behavior towards members. By contrast, in the present case the Union membership did not benefit from the money judgment and Plaintiffs have not shown that they necessarily benefited from whatever positive effect the judgment may have on the Union's future treatment of its members.

█ Moreover, in the case before us, shifting fees to the Union does not result in the costs of litigation being borne by the group that "would have had to pay them had it brought suit." *Mills,* 396 U.S. at 397, 90 S.Ct. at 628. Under the facts of this case, no Union member, outside Plaintiff class, could have brought suit to redress Plaintiffs' injuries. For these reasons, we hold that the record before us fails to establish that the benefits received by Plaintiffs and the rest of the Union membership meet the commonality requirement of the common benefit exception.

The Union also asserts that the common benefit exception requires the assessment of attorney fees in proportion to the benefits received. We agree.

In *Mills,* the Supreme Court held the common benefit exception was appropriate "where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate *to spread the costs proportionately* among [those benefiting]." 396 U.S. at 393–94, 90 S.Ct. at 626 (emphasis added). The Sixth Circuit has interpreted this language to mean that fees must be distributed in proportion to the benefits received. *Shimman,* 744 F.2d at 1235; *accord Guidry v. International Union of Operating Eng'rs, Local 406,* 882 F.2d 929, 944 (5th Cir.1989) (vacating award of attorney fees because award "would not spread the costs of litigation proportionate to the common benefit"), *vacated on other grounds,* 494 U.S. 1022, 110 S.Ct. 1465, 108 L.Ed.2d 603 (1990);

*Erkins v. Bryan,* 785 F.2d 1538, 1548 (11th Cir.) ("fees must spread the cost proportionally among those who benefit"), *cert. denied,* 479 U.S. 960, 107 S.Ct. 455, 93 L.Ed.2d 402 (1986). Although we have not previously addressed the issue of proportionality between fees and benefits, in *Jordan v. Heckler,* 744 F.2d 1397 (10th Cir.1984), we explained that *Mills* requires the spreading of costs among class members "in a reasonable and fair manner." *Id.* at 1400. Requiring the assessment of fees in proportion to the benefit received satisfies this "reasonable and fair" standard.

Moreover, *Alyeska* teaches us that the common benefit and common fund exceptions are justified because fees are required to be shifted "with some exactitude to those benefiting." 421 U.S. at 265 n. 39, 95 S.Ct. at 1626 n. 39. The *Alyeska* Court refused to extend the rationale of the common fund and common benefit exceptions to private attorney general cases, because to do so would require "sophisticated economic analysis" in order to proportionately assess fees according to benefits received. *Id.* This concern on the part of the *Alyeska* Court demonstrates that indeed proportionality between fees and benefits received is required under the common fund and common benefit exceptions. Further, in *Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), the Supreme Court explained that the common fund exception met *Alyeska's* exactitude requirement because, "a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee *in the exact proportion* that the value of this claim bears to the total recovery." *Id.* at 479, 100 S.Ct. at 750 (emphasis added). Likewise here, we hold that in order for the common benefit exception to meet *Alyeska's* requirement of fee shifting with exactitude, the plaintiff and the benefiting group members must bear fees in proportion to benefits received.

The assessment of attorney fees against the entire Union membership here does not spread the costs of litigation in proportion to the benefits received. Like the plaintiffs in *Shimman* and *Guidry,* Plaintiffs received

significant money damages, while the Union members received only the incidental benefit of potentially improved future treatment by the Union. Under the district court's shifting of fees to the Union, Plaintiffs would not be required to pay any greater portion of the attorney fees even though Plaintiffs received a substantially greater benefit. *See Guidry*, 882 F.2d at 944; *Shimman*, 744 F.2d at 1235. Such a result would allow Plaintiffs to be unjustly enriched at the expense of the Union membership; therefore, the court's award of attorney fees under the common benefit exception cannot stand.

Finally, we believe our interpretation of the common benefit exception is in keeping with the general policy of *Alyeska* that, in the absence of a statute or enforceable contract, attorney fees should be awarded sparingly. 421 U.S. at 264, 95 S.Ct. at 1625. As in *Shimman*, there was no injunctive relief obtained in this case to effect any changes in the Union's practices or procedures. Instead, the benefit that the district court found inured to the union members was not "by direct operation of the judgment, but rather w[as] the result of a realization that the union would have to reform itself or risk exposure to further liability." *Shimman*, 744 F.2d at 1235 n. 13. We agree with the *Shimman* court that, although "[s]ociety as a whole always benefits through general deterrence when the law is enforced," *id.*, allowing fee shifting based on such incidental benefits resembles the private attorney general rationale which was rejected by *Alyeska*.

REVERSED and REMANDED.