**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 26 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GLORIA F. ELLIS; CLAUD M. ELLIS,

Plaintiffs-Appellants,

v.

CAC FINANCIAL CORP., an
Oklahoma Corporation; DEACONESS
HOSPITAL PROFESSIONAL
PRACTICE ASSOCIATION, an
Oklahoma Corporation; MORGAN &
ASSOCIATES, P.C., an Oklahoma
Corporation; PORTER MORGAN;
JOYCE MORGAN; PORTER H.
MORGAN, III; LISA GIFFORD;
KELLYENE ROPER; PAUL
DOUGHERTY; VICKI LACY; JANE
DOE; MARY ALICE SIMS; BRAD
LANTZ, Individuals,

Defendants-Appellees.

No. 00-6170
(D.C. No. 99-CV-516-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiffs Gloria F. Ellis and Claud Ellis appeal from the district court's order granting summary judgment in favor of defendants-appellees. Appellants also appeal from the district court's order awarding Fed. R. Civ. P. 11 sanctions against them.

FACTS

Defendant-appellee CAC Financial Corp. sued Gloria Ellis in Oklahoma state district court, seeking to collect debts assigned to CAC Financial by Deaconess Hospital. One of these debts arose from hospital services provided to Claud Ellis. Claud Ellis is Gloria Ellis's ex-husband. At a hearing held in state court on February 26, 1999, both Claud and Gloria Ellis represented that Gloria Ellis was not a guarantor for the debt owed by Claud Ellis. CAC Financial immediately amended its petition in open court to drop the claim for the debt owed by Claud Ellis.

The state district court then granted judgment in favor of CAC Financial against Gloria Ellis in the amount of $1,676.90, the amount she owed Deaconess Hospital. In her brief in this court, Gloria Ellis indicates that she has appealed

-2-

from this judgment to the Oklahoma Supreme Court. According to Ms. Ellis, her appeal remains pending in that court.

Appellants subsequently filed this action in federal district court. They alleged causes of action against appellees for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o (FDCPA), the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681u (FCRA), and for fraud, perjury, libel, conspiracy, mail fraud, legal malpractice, malicious prosecution, abuse of process, defamation, violation of privacy, and unauthorized practice of law.[1]

The district court granted summary judgment for the appellees on all claims. It further denied appellants' motion for Rule 11 sanctions against appellees' counsel and awarded Rule 11 sanctions against Gloria Ellis and in favor of appellees.

## ANALYSIS

I. Jurisdictional issues

As in any appeal, we must begin by considering whether we have jurisdiction over the claims raised. This case presents issues concerning both appellate jurisdiction and federal subject matter jurisdiction. We will consider

---

[1] A careful reading of appellants' complaint is essential to determine what causes of action they allege, because, as the district court recognized, their complaint is unclear as to the legal basis for their claims.

the issues concerning appellate jurisdiction first.   See, e.g. , Diaz v. Romer , 961 F.2d 1508, 1510 (10th Cir. 1992) (addressing timeliness of notice of appeal before considering argument concerning district court's subject matter jurisdiction).

A. Appellate jurisdiction

Appellants seek review of three different orders entered by the district court. First, they challenge the district court's underlying order of summary judgment. Second, they challenge the district court's order denying their Fed. R. Civ. P. 60 "motion for reconsideration." Finally, they challenge the district court's order awarding Rule 11 sanctions to defendants.

The jurisdictional facts are as follows. The district court entered its order granting summary judgment to the defendants on May 5, 2000. In this order, the district court also granted defendants' motion for Rule 11 sanctions. The court reserved ruling on the amount of sanctions, and set a briefing schedule on the sanctions issue. On the same date, the district court entered judgment on the summary judgment order pursuant to Fed. R. Civ. P. 58.

On May 15, 2000, appellants filed a notice of appeal. On the same date, they also filed a "motion for reconsideration" pursuant to Fed. R. Civ. P. 60. Three months later, on August 16, 2000, the district court entered an order denying the Rule 60 motion and setting the amount of sanctions to be awarded

-4-

against appellants. Appellants did not file a new notice of appeal or supplement their notice of appeal after the district court's order of August 16, 2000.

### 1. Order of summary judgment

The summary judgment portion of the district court's May 5, 2000 order became final and appealable when the Rule 58 judgment was entered. This is true in spite of the fact that it left the amount of Rule 11 sanctions undetermined. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202 (1988). Appellants' May 15, 2000 notice of appeal from this order was timely, yet premature, because they also filed a Rule 60 motion on the same day as their notice of appeal. See Fed. R. App. P. 4(a)(4)(A)(vi). Their notice of appeal became effective when the district court denied their Rule 60 motion, see id. Rule 4(a)(4)(B)(i), and their appeal from the summary judgment order therefore is now properly before us.

### 2. Order denying Rule 60 motion

The May 15, 2000 notice of appeal was ineffective to appeal from the order denying appellants' Rule 60 motion, however. In order to appeal from that order, appellants were required to file an amended notice of appeal after the motion was resolved. See id. Rule 4(a)(4)(B)(ii); see also Stouffer v. Reynolds, 168 F.3d 1155, 1172 (10th Cir. 1999). Since they did not do so, we may not review the district court's order denying their Rule 60 motion.

### 3. Order granting Rule 11 sanctions

For similar reasons, we lack jurisdiction over appellants' appeal from the order granting Rule 11 sanctions. An award of attorney's fees is not final until reduced to a sum certain. Phelps v. Washburn Univ. of Topeka, 807 F.2d 153, 154 (10th Cir. 1986); see also S. Travel Club, Inc. v. Carnival Air Lines, Inc., 986 F.2d 125, 129-31 (5th Cir. 1993) (applying principle in Rule 11 context). The order of Rule 11 sanctions was only reduced to a sum certain on August 16, 2000, long after appellants had filed their notice of appeal. "[A] supplemental notice of appeal is required for us to have jurisdiction over an attorneys' fees issue that becomes final subsequent to the initial notice of appeal." EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1250 (10th Cir. 1999). No such supplemental notice was filed here; hence we have no jurisdiction to review the award of Rule 11 sanctions. We conclude that we have jurisdiction only over appellants' appeal from the district court's order granting summary judgment to appellees on appellants' underlying claims.

### B. Subject matter jurisdiction

We turn to the issue of subject matter jurisdiction. The gist of many of appellants' claims is that CAC Financial procured the state court judgment against them through fraudulent and improper means. The proper remedy for a state court litigant's dissatisfaction with a state court judgment, however, is not a suit in

federal court; instead, litigants must seek review of a state court judgment through the state court appellate process. Then, if still dissatisfied, they may seek review in the United States Supreme Court.

The jurisdictional principle underlying these concepts is known as the Rooker-Feldman doctrine. See Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Rooker-Feldman provides that federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments.[2] The losing party in a state court proceeding is generally "barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994). Review of the state court judgment must proceed to the state's highest court and then to the United States Supreme Court pursuant to 28 U.S.C. § 1257. See Facio v. Jones, 929 F.2d 541, 543 (10th Cir. 1991).

It is true that appellants do not expressly seek to overturn the state court judgment.[3] Instead, they complain about procedures used to obtain the judgment,

_____

[2] When faced with a Rooker-Feldman issue, this court must resolve it before turning to nonjurisdictional issues raised by the parties. See Long v. Shorebank Dev. Corp., 182 F.3d 548, 554-55 (7th Cir. 1999).

[3] Their prayer for relief asks the federal courts to "find in Plaintiff(s) favor
(continued...)

such as improper assignments of the amount due, perjury, and notarization of rubber-stamped signatures. It would be impossible for a federal court to resolve their claims of fraud, malicious prosecution and abuse of process based on these allegations, however, without calling into question the state court judgment in favor of CAC Financial.

The same is true for many of appellants' FDCPA claims, in which they attempt to call the state court judgment into question. These claims against CAC Financial are "inextricably intertwined" with the state court judgment and barred by Rooker-Feldman. See, e.g., Jordahl v. Democratic Party of Va., 122 F.3d 192, 202 (4th Cir. 1997); Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995) ("Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.").

II. Merits of remaining claims

We have carefully reviewed the briefs, the applicable law, and the record, including the district court's order granting summary judgment dated May 5,

---

[3](...continued)
and award damages for wages garnished, loss of wages, cost of legal advice and additional damages for conspiracy, loss of credit, fraud, deception, harassment, intimidation, invasion of privacy, humiliation, malicious prosecution, abuse of process, defamation, health misery and court cost[s] along with punitive damages, all as provided by law." R. doc. 27 at 9.

2000.  With the exception of those claims barred by the _Rooker-Feldman_ doctrine, we affirm the district court's award of summary judgment to defendants for substantially the same reasons stated in its order of May 5, 2000.

This court lacks appellate jurisdiction to review the district court's orders denying appellants' Rule 60 motion and the order awarding Rule 11 sanctions against appellants. The order of the district court granting summary judgment to appellees is AFFIRMED in part, VACATED in part, and REMANDED with instructions to DISMISS appellants' complaint to the extent it is barred by the Rooker-Feldman doctrine, as discussed in this order and judgment.

Entered for the Court

Mary Beck Briscoe
Circuit Judge